**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LAURA CARROLL, KATHERINE EXO, ARMAND RYDEN, and KATHARINE SHAFFER, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) ) | Case No.: |
| ) | Judge: |
| Plaintiffs, ) ) | |
| v. ) ) | |
| S. C. JOHNSON & SON, INC. and VMG PARTNERS, LLC, ) ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ) ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Laura Carroll, Katherine Exo, Armand Ryden, and Katharine Shaffer (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated who purchased babyganics mineral-based sunscreen lotion SPF 50+ and mineral-based sunscreen spray SPF 50+ against Defendants S. C. Johnson & Son, Inc. and VMG Partners, LLC ("Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.     Consumers, like Plaintiffs and the putative classes, buy sunscreen to prevent sunburns and other harmful health effects caused by exposure to UV radiation. Sunscreen prevents burning and decreases skin's exposure to UV radiation by absorbing UV radiation on the skin or by reflecting or scattering part or all of the UV radiation away from the skin.

2.     Sun Protection Factor ("SPF") informs the consumer of the level of sunburn protection provided by the sunscreen.  A sunscreen with a higher SPF, such as SPF 50, should

filter out more UV radiation and provide more protection as compared to a sunscreen with a lower SPF.

3.      Plaintiffs are some of the hundreds of thousands of consumers who have purchased babyganics mineral-based sunscreen lotion SPF 50+ and mineral-based sunscreen spray SPF 50+ (the "Products") based upon the advertised SPF number. Consumers, like Plaintiffs, reasonably expect that a bottle labeled "SPF 50+" will have an SPF of at least 50, and not a significantly lower amount of protection.

4.      However, testing conducted by counsel for Plaintiffs in accordance with FDA sunscreen testing protocols revealed that both babyganics mineral-based sunscreen lotion SPF 50+ and mineral-based sunscreen spray SPF 50+ both have an SPF of no higher than 30, and possibly much lower.

5.      Plaintiffs bring this putative class action seeking damages sustained as a direct and proximate result of Defendants' violations of various state laws as outlined in greater detail herein, in connection with Defendants' marketing and sales of purchased babyganics mineral-based sunscreen lotion SPF 50+ and mineral-based sunscreen spray SPF 50+.  Plaintiffs and putative class members have been, and continue to be, injured by Defendants' pattern and practice of placing into the stream of commerce sunscreen products containing a false SPF number, and largely inflated UV protection numbers, which Defendants manufacture, distribute and sell.

6.      Defendants distribute, market, produce, manufacture, and sell sunscreen products under the brand name "babyganics".

7.      The babyganics product line is specifically marketed toward parents of babies who seek to purchase products that focus on "Safety", "Accessibility", "Effectiveness" and

"Sustainability."  As part of that, babyganics states, "We formulate products that do what they say they'll do, always keeping babies in mind, and continue to do it reliably over time."[1]

8.     Defendants have known, or should have known, for years that the Products contain less UV protection than Defendants advertise, causing Plaintiffs and Class members to rely on a product which contains a false and significantly inflated SPF number.

9.     Defendants' statements are false and misleading to a reasonable consumer because the Products do not have the advertised level of SPF. The statements are likely to deceive the public.

10.     Despite notice and knowledge of their material misrepresentations or omissions, Defendants have not offered to compensate their customers to remedy their damages.

11.     Had Plaintiffs and members of the putative classes known that the Products have less SPF protection than Defendants otherwise advertise, Plaintiffs and members of the putative classes would not have purchased the sunscreen.

12.     As a direct and proximate result of Defendants' deceptive acts and practices in connection with the sale of the Products, Plaintiffs and members of the putative classes have sustained economic injury by paying for a falsely advertised product that did not perform as advertised and being deprived of the benefit of the bargain.

13.     Plaintiffs seek damages and equitable remedies under statutory and common law claims for themselves and members of the putative classes.  Identified definitively below, the putative classes include consumers who have purchased babyganics mineral-based sunscreen lotion SPF 50+ and mineral-based sunscreen spray SPF 50+.

**JURISDICTION & VENUE**

---

[1] *See Our Standards,* BABYGANICS.COM, http://babyganics.com/our-standards/ (last visited Aug. 9, 2017).

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, to a reasonable probability; and (iii) there is minimal diversity because at least one Plaintiff is a citizen of a state different from at least one Defendant.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 inasmuch as (i) Plaintiffs Laura Carroll and Katherine Exo are domiciled and purchased the Products in this District; (ii) many of the acts and transactions giving rise to this action occurred in this District; (iii) Defendants are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the marketing, distribution and sale of their products in this District; and (iv) Defendants currently do substantial business in this District.

### PARTIES

16.     Plaintiff Laura Carroll is a citizen of the State of Illinois and a resident of Cook County, Illinois. On May 14, 2017, Plaintiff Carroll purchased a six-ounce tube of babyganics mineral-based sunscreen lotion SPF 50+ at a Target in Chicago, Illinois, for which she paid approximately $9.99.

17.     Plaintiff Katherine Exo is a citizen the State of Illinois who resides in Cook County, Illinois.  Plaintiff Exo most recently purchased a six-ounce tube of babyganics mineral-based sunscreen lotion SPF 50+ at a Target in Chicago, Illinois in summer 2016, for which she paid approximately $9.99.

18.     Plaintiff Armand Ryden is a citizen of the State of California and resides in Los Angeles, California.  Plaintiff Ryden purchased babyganics mineral-based sunscreen lotion SPF 50+ several times from Amazon.com in 2016 and 2017, most recently on March 15, 2017 for

which Plaintiff Ryden paid approximately $20 for a pack of two six-ounce tubes.

19.     Plaintiff Katharine Shaffer is a citizen of the State of Washington and resides in Port Orchard, Washington.  Plaintiff Shaffer purchased babyganics mineral-based sunscreen lotion SPF 50+ from Amazon.com on August 2, 2015.  Plaintiff Shaffer paid $20.46 for a pack containing 60 ounces of sunscreen.

20.     Defendant VMG Partners, LLC is a Delaware corporation with its principal place of business at 39 Mesa St., Suite 310, San Francisco, California, 94129.

21.     Defendant S. C. Johnson & Son, Inc. is a privately-held Wisconsin corporation with its principal place of business at 1525 Howe St., Racine, Wisconsin, 53403-2237.

22.     On July 26, 2016, Defendant S. C. Johnson & Son, Inc. purchased the entire babyganics line of products from private equity firm Defendant VMG Partners, LLC.

23.     Defendant VMG Partners, LLC continues, as of this writing, to advertise the babyganics line of products on its website as one of its brands.[2]

## STATEMENT OF FACTS

### A.     *Consumer Reports* **Articles**

24.     In the summer of 2016, *Consumer Reports* published an article stating that, according to its research, **43 percent of sunscreen products fail to meet the SPF claim on the label.**[3]

25.     In particular, *Consumer Reports* noted that mineral-based sunscreens "are far more likely [than chemical-based sunscreens] to fall short of their promised SPF."  It noted that

---

[2] *See Brands*, VMGPARTNERS.COM, http://www.vmgpartners.com/brands/ (last visited Aug. 9, 2017).
[3] *Consumer Reports Finds That Nearly Half of Sunscreens Tested Did Not Meet Their SPF Claims*, CONSUMERREPORTS.ORG., http://www.consumerreports.org/media-room/press-releases/2016/05/consumer-reports-finds-that-nearly-half-of-sunscreens-tested-did-not-meet-their-spf-claims-/ (last visited Aug. 8, 2017).

**74 percent** of mineral-based sunscreens did not meet their SPF claims.

26.    In response, Senator Chuck Schumer of New York called on the FDA to "launch a full-on investigation into deceptive SPF marketing."[4]

27.    In May of 2017, *Consumer Reports* published a similar report on sunscreen SPF and noted that the FDA stated in June 2016 in response to last year's article that "the agency had the resources for only about 30 employees to cover more than 100,000 over-the-counter drugs."[5] Additionally, the article noted that the FDA does not routinely test sunscreens itself. Manufacturers must test their own sunscreens, but their results need not be reported to the FDA until or unless the FDA requests them.

**B.    Babyganics mineral-based sunscreen lotion SPF 50+ and babyganics mineral-based sunscreen spray SPF 50+**

28.    Babyganics mineral-based sunscreen lotion SPF 50+ and babyganics mineral-based sunscreen spray SPF 50+ are or have been produced, manufactured, sold and distributed by Defendants.

29.    Babyganics' website sets forth that babyganics mineral-based sunscreen lotion SPF 50+ is sold in a two-ounce and a six-ounce tube size, as well as in a set of 12 single-use tubes.  Babyganics mineral-based sunscreen spray SPF 50+ is sold in a six-ounce bottle and an eight-ounce bottle.[6]

---

[4] *Schumer:  New Report Shows Nearly Half of All Sunscreens Make False Claims About SPF Protection,* SCHUMER.SENATE.GOV., https://www.schumer.senate.gov/newsroom/press-releases/schumer-new-report-shows-nearly-half-of-all-sunscreens-make-false-claims-about-spf-protection-senator-pushes-fda-to-test-sunscreens-confirm-true-spf-numbers-and-crackdown-on-labels-that-promise-protection-but-instead-leave-consumers-burned_ (last visited Aug. 9, 2017).
[5] Trish Calvo, *Get the Best Sun Protection*, CONSUMER REPORTS (MAY 18, 2017), http://www.consumerreports.org/sun-protection/get-the-best-sun-protection/ (last visited Aug. 9, 2017).
[6] *See I Want Products*, BABYGANICS.COM, (May 18, 2017), http://babyganics.com/products/ (last visited Aug. 9, 2017).

30.     Babyganics sunscreen is available online and in hundreds of retail stores, including but not limited to Walgreens, CVS, Overstock.com, Amazon.com, Jet.com, Toys "R" Us, Walmart, eBay, and Target.

31.     SPF – which stands for Sun Protection Factor – is a standardized rating system for measuring the fraction of sunburn-producing UV rays that reach the skin, which is based on objective evidence and standardized protocols.

32.     The SPF number stands for the approximate measure of time a person who has applied the sunscreen can stay out in the sun without getting burned, compared to the amount of time a person with no protection will get burned in similar conditions.

33.     Thus, SPF 50 will allow a person to stay in the sun 50 times longer without burning than if that person were wearing no protection at all.

C.      **Defendants' Uniform Written Misrepresentations on the Label of the Product**

34.     Since the initial offering of the Products, each and every container of this product has borne a uniformly-worded label which identifies the name of the product in large letters on the front as "babyganics mineral-based sunscreen" and "50+ SPF" as depicted in Figures 1-2, below.

**Figure 1**



**<u>Figure 2</u>**



35.  In actuality, rigorous scientific testing has revealed that the Products do not provide an SPF of 50 (or greater).

36.     Such testing includes, but is not limited to, testing conducted by the noted consumer protection periodical *Consumer Reports*, which reported in May of 2017 that its own testing had revealed that babyganics mineral-based sunscreen lotion SPF 50+ had an SPF of 25 or less and stated "This product is Poor in its variation from SPF."[7]  In the context of *Consumer Reports*' testing, this means that the measured SPF was "Below 50% labeled SPF."[8]

37.     In addition, Plaintiffs conducted their own independent testing of both babyganics mineral-based sunscreen lotion SPF 50+ and mineral-based sunscreen spray SPF 50+, utilizing the methodology for SPF testing mandated by the FDA.

38.     Specifically, the independent testing conducted by Plaintiffs was conducted in compliance with all FDA testing methods embodied in FDA Final Rule, 21 CFR Parts 201 and 310, (Federal Register/Vol 76, No 117/Friday, June 17, 2011/Rules and Regulations, including 21 CFR 201.327).

39.     The results of the independent testing conducted by Plaintiffs were consistent with the *Consumer Reports* test results and confirmed that the Products had an actual SPF substantially lower than the claimed SPF 50+.  Specifically, the results of the independent testing conducted showed that both Products had an SPF of no higher than 30, and possibly much lower.

40.     An SPF of 30 offers significantly less sunscreen protection than an SPF of 50(+).

41.     An SPF of 30 is considered a low level of sunscreen protection, allowing users to remain in the sun without damage for a significantly shorter period than an SPF 50+ would allow.

42.     Defendants, as the developers, manufacturers, and exclusive sellers and

---

[7] *Babyganics Mineral-Based Lotion, SFP 50+ Sunscreen*, CONSUMERREPORTS.ORG, http://www.consumerreports.org/products/sunscreen/babyganics-mineral-based-sunscreen-spf-50-387509/overview/ (last visited Aug. 9, 2017).
[8] *Sunscreens*, CONSUMERREPORTS.ORG, http://www.consumerreports.org/cro/sunscreens.htm (last visited Aug. 9, 2017).

distributors of the Products, have been aware or should have been aware since the Products' inceptions that the true SPF of the Products was much lower than 50.

43.    Indeed, Defendants did testing on babyganics sunscreen prior to the Products being offered for sale and such testing should have made Defendants aware that the Products do not have an SPF rating of 50+.

44.    Despite this, Defendants purposely claimed the highest SPF factor which may lawfully be claimed in order to induce the false belief in consumers that they were purchasing a product which provided a high level of SPF.

45.    Defendants' false claim that the Products have an SPF rating of 50+ – the highest available and even a suggestion that the Products are higher than a 50 SPF (i.e, the '+') which is itself improper – is especially egregious and material because the Products are specifically marketed by Defendants for use on babies as is evidenced by the use of the word "baby" in the name of the product line.

46.    Defendants have been notified of the defects with the Products purchased by Plaintiffs but have not remedied the problem.

47.    At no time did Defendants advise either Plaintiffs or putative class members that their sunscreen contained less UV protection than Defendants otherwise advertised.

48.    Plaintiffs and class members purchased the sunscreen with no reason to suspect or know that the sunscreen contained less UV protection than Defendants otherwise advertised and stated in writing on the product label.

49.    Defendants possessed proprietary knowledge regarding the data and information concerning the chemical formula and performance of the sunscreen which Plaintiffs and class members could not and did not review.

50.     Indeed, the Products are credence goods because their properties and purported benefits cannot be independently assessed or verified by the consumer at the time of purchase and such properties and benefits are made known to consumers only through the information provided on the label by the products' manufacturer and distributor.  *See* Richard A. Posner, *An Economic Approach to the Law of Evidence*, 51 STAN. L. REV. 1477, 1489 (1999) ("A good is a credence good if the consumer cannot readily determine its quality by inspection or even use, so that he has to take its quality 'on faith.'").

51.     In purchasing the Products, Plaintiffs and the class members had no choice but to necessarily and justifiably rely upon the written statements on the Products as accurate.

52.     Had Plaintiffs known that the actual SPF rating of the Products was substantially lower than what Defendants stated on the product labels, Plaintiffs would not have purchased the Products or would not have paid as much for the Products.

53.     As the direct and proximate result of Defendants' false and misleading statements and omissions, Plaintiffs and class members have suffered economic injury by being deprived of the full intended use of the purchased product and have been deprived of the benefit of the bargain they were promised by Defendants.

54.     By marketing, selling and distributing babyganics sunscreen to purchasers in Illinois, California, and Washington and throughout the United States, Defendants made actionable statements that the sunscreen contained the advertised UV protection and at all times failed to disclose that the Products did not in fact contain SPF 50 (or greater).

55.     Defendants engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

56. Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made.

57. As the distributor, marketer, producer, manufacturer, and seller of the Products, Defendants possessed proprietary knowledge regarding the data and information concerning the chemical formula and performance of the sunscreen which Plaintiffs and class members could not and did not review.

58. All of Plaintiffs' state law claims are based on misleading statements that violate FDA regulations. Such claims do not seek to impose any additional or different obligations beyond those already required by such FDA regulations.

59. Such parallel state claims alleging affirmative violations of FDA regulations are expressly permitted by 21 U.S.C. §343-1(a).

60. Further, Plaintiffs' claims arise, *inter alia*, from "front of the box" statements and symbols which are not regulated by the Nutrition Labeling and Education Act.

## CLASS ALLEGATIONS

61. Plaintiffs seek to bring this case as a class action, pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Procedure.

62. Plaintiffs seek certification of a nationwide class (the "Nationwide Class" or the "Class") defined as follows:

> All persons who purchased babyganics mineral-based sunscreen lotion SPF 50+ or mineral-based sunscreen spray SPF 50+ in the United States.

63. Additionally, or alternatively, Plaintiffs seek certification of the following sub-classes (the "State Subclass(es)" or the "Subclass(es)"), defined as follows:

> Illinois Subclass: All persons who purchased babyganics mineral-based sunscreen lotion SPF 50+ or mineral-based sunscreen spray SPF 50+ in Illinois.

13

California Subclass: All persons who purchased babyganics mineral-based sunscreen lotion SPF 50+ or mineral-based sunscreen spray SPF 50+ in California.

Washington Subclass: All persons who purchased babyganics mineral-based sunscreen lotion SPF 50+ or mineral-based sunscreen spray SPF 50+ in Washington.

64. Excluded from any Class[9] are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the sunscreen for purposes of resale, and the Judge(s) assigned to this case.

65. Plaintiffs reserve the right to amend or modify the proposed class definitions in connection with a motion for class certification or as warranted by discovery.

66. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria set forth in Federal Rule of Civil Procedure 23.

67. The members of the Class and Subclass for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

68. Upon information and belief, the proposed Nationwide Class is composed of hundreds of thousands if not millions of persons and each State Subclass is composed of thousands, if not hundreds of thousands, of persons.

69. No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between Class members and Defendants.

70. Rather, all claims in this matter arise from the identical, false, written affirmative statements on the product label as outlined in detail herein.

71. There are common questions of law and fact affecting the rights of all Class members, including, *inter alia*, the following:

---

[9] The term "Class" as used herein includes the Nationwide Class and all State Subclasses.

- The actual SPF of babyganics mineral-based sunscreen lotion SPF 50+ and babyganics mineral-based sunscreen spray SPF 50+;

- Whether Defendants' acts in naming the Products "babyganics mineral-based sunscreen lotion SPF 50+" and "babyganics mineral-based sunscreen spray SPF 50+" were false, affirmative statements of fact;

- Whether Defendants' acts in placing a uniform written statement on the label of the product, stating "50+ SPF," was a false, affirmative statement of fact;

- Whether Defendants were aware that babyganics mineral-based sunscreen lotion SPF 50+ and babyganics mineral-based sunscreen spray SPF 50+ lotion had SPFs substantially lower than 50; and

- The date Defendants became aware that babyganics mineral-based sunscreen lotion SPF 50+ and babyganics mineral-based sunscreen spray SPF 50+ had SPFs substantially lower than 50.

72. Each Plaintiff is a member of the Class and Subclass he or she seeks to represent.

73. The claims of Plaintiffs are not only typical of all Class and Subclass members; they are identical of the members of the Class and Subclass they seek to represent.

74. All claims of Plaintiffs and the Class and Subclasses arise from the same identical, false, written statement of affirmative fact on the babyganics mineral-based sunscreen lotion SPF 50+ and mineral-based sunscreen spray SPF 50+ labels as described herein.

75. All claims of Plaintiffs and the Class and Subclasses are based on the same legal theories.

76. Plaintiffs have no interest antagonistic to, or in conflict with, the Class or Subclass.

77.     Each Plaintiff will thoroughly and adequately protect the interests of the Class and Subclass he or she seeks to represent, having retained qualified and competent legal counsel to represent themselves and the Class and Subclass.

78.     Defendants have acted and refused to act on grounds generally applicable to the Class and each Subclass, thereby making appropriate injunctive and declaratory relief for the Class and Subclass as a whole.

79.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

80.     A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each Class member were small per container purchased and, as such, individual actions are not economically feasible.

81.     Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CLAIM FOR RELIEF

### BREACH OF WARRANTY

### By All Plaintiffs On Behalf of the Nationwide Class and Each State Subclass

82.     Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

83.     Defendants sold the babyganics mineral-based sunscreen lotion SPF 50+ and babyganics mineral-based sunscreen spray SPF 50+ in their regular course of business.  Plaintiffs and the Class and Subclass members purchased babyganics mineral-based sunscreen lotion SPF 50+ or babyganics mineral-based sunscreen spray SPF 50+.

84.     Defendants made promises and representations in an express warranty provided to

all consumers, which became the basis of the bargain between Defendants and each Plaintiff and Class and Subclass member.

85.    Defendants gave these express warranties to Plaintiffs and each Class and Subclass member in written form on the labels on the Products.

86.    Defendants' written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty.

87.    Defendants breached the warranty because the uniform written statement on each container of babyganics mineral-based sunscreen lotion SPF 50+ or babyganics mineral-based sunscreen spray SPF 50+, claiming an SPF of "50+", is false as the Products did not contain the properties Defendants represented.

88.    The false SPF information provided on the label was false when the sale took place and was undiscoverable to Plaintiffs and the Class and Subclass members at the time of purchase.

89.    All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiffs and the Class and Subclass in terms of paying for the goods at issue.  Defendants had actual and/or constructive notice of the false labeling information and to date have taken no action to remedy their breaches of express warranty.

90.    Defendant S. C. Johnson & Son, Inc. was on notice of its breaches of express warranty by virtue of the *Consumer Reports* article referenced herein, as well as written notice sent by Plaintiffs Laura Carroll, Katherine Exo, and Armand Ryden on June 2, 2017.

91.    Defendant VMG Partners, LLC was on notice of its breaches of express warranty by virtue of the *Consumer Reports* article referenced herein, as well as written notice sent by

Plaintiffs Laura Carroll, Katherine Exo, and Armand Ryden on June 9, 2017.

92.     Further, Defendants previously knew or should have known of the falsity of the label on the Products, due to, *inter alia*, Defendants' testing of the product.

93.     Defendants have refused or failed to remedy such breaches.

94.     By placing the Products in the stream of commerce, and by operation of law and the facts alleged herein, Defendants also warranted to Plaintiffs and Class and Subclass members that the sunscreen was accurately labeled in conformance with the law.

95.     Defendants' breaches of warranty have caused Plaintiffs and Class members to suffer injuries, by paying too much for falsely labeled products that did not perform as warranted, and entering into transactions they would not have entered into for the consideration paid.  As a direct and proximate result of Defendants' breaches of warranty, Plaintiffs and Class and Subclass members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the product as promised and the value of the product as delivered.

96.     As a result of the breach of these warranties, Plaintiffs and Class and Subclass members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

**SECOND CLAIM FOR RELIEF**

**BREACH OF IMPLIED CONTRACT AND VIOLATION OF
THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**By All Plaintiffs On Behalf of the Nationwide Class and Each State Subclass**

97.     Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

98.     By operation of law, there existed an implied contract for the sale of babyganics mineral-based sunscreen lotion SPF 50+ and babyganics mineral-based sunscreen spray SPF 50+ between Defendants and each Plaintiff and Class and Subclass member who purchased the Products.

99.     By operation of law, there existed an implied duty of good faith and fair dealing in each such contract.

100.    By the acts alleged herein, Defendants have violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendants and each Class and Subclass member.

101.    As a result of that breach, Plaintiffs and each Class and Subclass member suffered damages.

## THIRD CLAIM FOR RELIEF

### DISGORGEMENT/RESTITUTION

### On Behalf of the Nationwide Class and Each State Subclass

102.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

103.    Plaintiffs and the Class and Subclass members have conferred substantial benefits on Defendants by purchasing babyganics mineral-based sunscreen lotion SPF 50+ and/or babyganics mineral-based sunscreen spray SPF 50+, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

104.    Defendants either knew or should have known that the payments rendered by Plaintiffs and the Class and Subclass members were given and received with the expectation that the Products would be as represented and warranted.  For Defendants to retain the benefit of the

payments under these circumstances is inequitable.

105.    Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Products, including representing that the Products had an SPF of 50, Defendants reaped benefits, which resulted in each Defendant wrongfully receiving profits.

106.    Equity demands disgorgement of Defendants' ill-gotten gains.  Defendants will be unjustly enriched unless Defendants are ordered to disgorge those profits for the benefit of Plaintiffs and the Class and Subclass members.

107.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and the Class and Subclass members are entitled to restitution from Defendants and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants through this inequitable conduct.

### FOURTH CLAIM FOR RELIEF

**California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

### On Behalf of the California Subclass

108.    Plaintiff Ryden repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

109.    The Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq*. (the "UCL"), prohibits any "unlawful," "unfair," or "fraudulent" business act or practice and any false or misleading advertising.

110.    In the course of conducting their business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts, as set forth more fully herein,

and violating Cal. Civil Code §§ 1750, *et seq*.

111. Plaintiff Ryden and the other California Subclass members reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

112. Defendants' actions constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engaged in deceptive and false advertising, and misrepresented and omitted material facts regarding their products, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and/or unscrupulous activities that were substantially injurious to consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §§ 17200, *et seq*.

113. Business & Professions Code §§ 17200, *et seq*., also prohibits any "fraudulent business act or practice."

114. Defendants' actions, claims, nondisclosures, and misleading statements, as alleged previously in detail in this Complaint, also constitute "fraudulent" business practices in violation of the UCL because, among other things, they are false, misleading, and/or likely to deceive reasonable consumers within the meaning of Business & Professions Code §§ 17200, *et seq*.

115. Plaintiff Ryden saw and relied on Defendants' representations clearly labelled on the front of the packaging that the Product was "SPF 50+". These representations were materially false and misleading as described herein.

116. There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

117. As a result of Defendants' pervasive unlawful and false marketing, including

deceptive and misleading acts and omissions as detailed in this Complaint, Plaintiff Ryden and each member of the California Subclass have in fact been harmed as described above.

118.  If Defendants had not misrepresented the Products as having a higher SPF level than they actually did, Plaintiff Ryden and the other California Subclass members would not have purchased Defendants' Products or would not have paid as much for the Products as they did.

119.  As a result of Defendants' unlawful, unfair, and fraudulent practices, Plaintiff Ryden and the other California Subclass members have each suffered injury in fact and lost money.

120.  As a result of their deception, Defendants have been able to reap unjust revenue and profit in violation of the UCL.

121.  Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate for Plaintiff Ryden and the other California Subclass members.

122.  As a result of Defendants' conduct in violation of the UCL, Plaintiff Ryden and the other California Subclass members have each been injured as alleged herein in amounts to be proven at trial because they purchased the Products without full disclosure of the material facts discussed above.

123.  As a result, Plaintiff Ryden and the other California Subclass members seek restitution and disgorgement of all money obtained from members of the California Subclass as a result of unlawful, unfair, and/or fraudulent conduct, and also seek injunctive relief, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## FIFTH CLAIM FOR RELIEF

**California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq*.**

## On Behalf of the California Subclass

124.    Plaintiff Ryden repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

125.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq*. (the "CLRA"). Plaintiff Ryden and each member of the California Subclass is a consumer as defined by California Civil Code § 1761(d). The affected products are goods within the meaning of the CLRA.

126.    Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff Ryden and the other California Subclass members, which were intended to result in, and did result in, the sale of the affected products: "(5)   Representing that [the products] have … characteristics, … uses [or] benefits … which they do not have; (7)   Representing that [the products] are of a particular standard, quality, or grade … if they are of another; and (9) Advertising goods … with intent not to sell them as advertised."

127.    Defendants violated the CLRA by marketing and advertising the babyganics mineral-based sunscreen lotion SPF 50+ and babyganics mineral-based sunscreen spray SPF 50+ in the manner described in detail previously herein, when they knew, or should have known, that the labeling and advertisements were deceptive, false and misleading.

128.    Defendants were in a position to know, both from their own product knowledge and independent testing, that the SPF of the Products fell far short of their advertised levels.

129.     Defendants intended that Plaintiffs Ryden and the other California Subclass members, would rely on the false and misleading representations, and any reasonable consumer would deem the false and misleading representations material to the purchase of the Products.

130.     Plaintiff Ryden saw and relied on Defendants' misrepresentations clearly labelled on the front of the packaging that the Product was "SPF 50+".

131.     California Civil Code § 1780(a)(2) permits any court of competent jurisdiction to enjoin practices that violate California Civil Code § 1770.

132.     On June 2, 2017, Plaintiff Ryden sent Defendant S. C. Johnson & Son, Inc. a letter demanding that Defendant rectify the problems listed herein.  Defendant has failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers with thirty (30) days of the written notice pursuant to § 1782 of the CLRA.

133.     On June 9, 2017, Plaintiff Ryden sent Defendant VMG Partners, LLC a letter demanding that Defendant rectify the problems listed herein.  Defendant has failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers with thirty (30) days of the written notice pursuant to § 1782 of the CLRA.

134.     Accordingly, Plaintiff Ryden seeks to recover actual or statutory compensatory/monetary damages for himself and each member of the California Subclass as authorized by California Civil Code § 1780(a)(1), restitution as applicable and authorized under California Civil Code § 1780(a)(3), and punitive damages as authorized by California Civil Code § 1780(a)(4), which are appropriate in this case in light of Defendants' knowing, intentional, fraudulent and unconscionable conduct, Defendants' reckless disregard of their legal obligations to the members of California Subclass, and/or as otherwise recoverable under California Civil

Code § 1780(a)(4).  A copy of the letters are attached hereto as Exhibit A.

## SIXTH CLAIM FOR RELIEF

### Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

### On Behalf of the Illinois Subclass

135.    Plaintiffs Carroll and Exo repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

136.    This cause of action is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("ICFA").

137.    The express purpose of the ICFA is to "protect consumers" "against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…." 815 ILCS 505/1.

138.    Plaintiffs Carroll and Exo and the Illinois Subclass members are "consumers" within the meaning of 815 ILCS 505/1(e).

139.    Defendants are engaged in "trade or commerce" as defined by 815 ILCS 505/1(f).

140.    815 ILCS 505/2 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omissions of such material fact … in the conduct of any trade or commerce."

141.    815 ILCS 505/2 also states that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

142.    Defendants' unfair and deceptive practices, including falsely labeling babyganics

mineral-based sunscreen lotion SPF 50+ and babyganics mineral-based sunscreen spray SPF 50+ as "SPF 50+" when they are not, are likely to mislead – and have mislead – consumers acting reasonably in the circumstances, and violate 815 ILCS 505/2. This includes misleading Plaintiffs Carroll and Exo and the Illinois Subclass.

143. Defendants have violated the ICFA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

144. Plaintiffs Carroll and Exo and the members of the Illinois Subclass have been aggrieved by Defendants' unfair and deceptive practices in that they purchased the Products, which they would not have purchased or would not have paid as much for had they known the true facts.

145. The damages suffered by Plaintiffs Carroll and Exo and the Illinois Subclass were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as more fully described herein.

146. Pursuant to 815 ILCS 505/10a, Plaintiffs Carroll and Exo and the Illinois Subclass seek a court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement. Additionally, pursuant to 815 ILCS 505/10a, Plaintiffs Carroll and Exo and the Illinois Subclass seek economic damages, punitive damages, and attorneys' fees and costs.

147. In accordance with 815 ILCS 505/10a, Plaintiffs, concurrent with the filing of this complaint, have served notice of this complaint on the Illinois Attorney General.

## SEVENTH CLAIM FOR RELIEF

**Washington Unfair Business Practices – Consumer Protection Act, RCW 19.86.010 *et seq.***

**On Behalf of the Washington Subclass**

148.     Plaintiff Shaffer repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

149.     The Washington Unfair Business Practices – Consumer Protection Act, RCW 19.86.010 *et seq.*, prohibits any "unfair or deceptive acts or practices in the conduct of any trade or commerce."

150.     Defendants' actions constitute "unfair" or "deceptive" business acts or practices because, as alleged above, *inter alia*, Defendants engaged in deceptive and false advertising, and misrepresented and omitted material facts regarding the Products, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and/or unscrupulous activities that were substantially injurious to consumers.

151.     Plaintiff Shaffer saw and relied on Defendants' misrepresentations clearly labelled on the front of the packaging that the Product was "SPF 50+".

152.     Defendants' statement that the Products are "SPF 50+" possesses a tendency or capacity to mislead.

153.     As a result of Defendants' pervasive false marketing, including deceptive and misleading acts and omissions as detailed in this Complaint, Plaintiff Shaffer and each member of the Washington Subclass have in fact been harmed as described above.

154.     If Defendants had not misrepresented babyganics mineral-based sunscreen lotion SPF 50+ and babyganics mineral-based sunscreen spray SPF 50+ as being of a higher SPF level than they were, Plaintiff Shaffer and the other Washington Subclass members would not have

purchased Defendants' Products or would not have paid as much for the Products as they did.

155.    As a result of Defendants' unlawful, unfair, and fraudulent practices, Plaintiff Shaffer and the other Washington Subclass members have each suffered injury in fact and lost money.

156.    As a result of their deception, Defendants have been able to reap unjust revenue and profit in violation of the Washington Unfair Business Practices – Consumer Protection Act.

157.    Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate for Plaintiff Shaffer and the other Washington Subclass members.

158.    As a result of Defendants' conduct in violation of the Washington Unfair Business Practices – Consumer Protection Act, Plaintiff Shaffer and the other Washington Subclass members have each been injured as alleged herein in amounts to be proven at trial because they purchased the Products without full disclosure of the material facts discussed above.

159.    As a result, Plaintiff Shaffer and the other Washington Subclass members seek actual damages, costs, reasonable attorneys' fees, injunctive relief, and, if applicable, treble damages in accordance with RCW 19.86.090.

160.    In accordance with RCW 19.86.095, Plaintiffs, concurrent with the filing of this complaint, have served a copy of the initial pleading with the Washington Attorney General.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request relief against Defendants as set forth below:

      a.  Certify the proposed Nationwide Class and all state Subclasses as class actions pursuant to Federal Rule of Civil Procedure 23;

      b.  Appoint each Plaintiff as representative of the applicable Class and Subclass;

c. Appoint Plaintiffs' Counsel as co-lead counsel for the Class and Subclasses;

d. Enter an order for injunctive and declaratory relief as described herein;

e. Enter judgment in favor of each Class member for damages suffered as a result of the conduct alleged herein and/or restitution, to include interest and pre-judgment interest;

f. Award Plaintiffs reasonable attorneys' fees and costs; and

g. Grant such other and further legal and equitable relief as the Court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 10, 2017

By:   _/s/ Theodore B. Bell_
Theodore B. Bell
Carl V. Malmstrom
**WOLF HALDENSTEIN**
   **ADLER FREEMAN & HERZ LLC**
70 W. Madison St., Suite 1400
Chicago, IL 60602
Telephone: (312) 984-0000
Fax: (312) 214-3110
Email: tbell@whafh.com
Email: malmstrom@whafh.com

Janine Lee Pollack
**WOLF HALDENSTEIN**
   **ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Fax: (212) 686-0114
Email: pollack@whafh.com

Stephen P. DeNittis
Joseph Osefchen
Shane Prince
**DeNITTIS OSEFCHEN PRINCE, PC**
Five Greentree Centre
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: (856) 797-9951
Fax: (856) 797-9978
Email: sdenittis@denittislaw.com

*Counsel for Plaintiffs and the Proposed Class*