IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| LAURA CARROLL, KATHERINE EXO, ARMAND RYDEN, and KATHARINE SHAFFER, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | |
| v. | Case No. 1:17-CV-05828 |
| S. C. JOHNSON & SON, INC. and VMG PARTNERS, LLC, | Honorable Charles R. Norgle |
| Defendants. | |

**DEFENDANT S.C. JOHNSON & SON, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STAY PENDING CLASS ACTION SETTLEMENT**

## I.     INTRODUCTION

This putative class action alleges that Defendants S.C. Johnson & Son, Inc. ("S.C.

Johnson") and VMG Partners, LLC ("VMG") mislead consumers in making false "SPF 50+"

labeling and advertising claims for two sunscreen products: Babyganics mineral-based sunscreen

lotion SPF 50+ and Babyganics mineral-based sunscreen spray SPF 50+ (the "Products").

Plaintiffs Laura Carroll, Katherine Exo, Amrand Ryden, and Katharine Shaffer seek damages on

behalf of a nationwide class of purchasers of the Products (the "Putative Babyganics Sunscreen

Class").  But there is already a pending motion to approve a nationwide class settlement covering

***all*** Babyganics products, including the Products, purchased between September 7, 2010, and the

future date on which the settlement is preliminarily approved (the "Babyganics Settlement

Class"), in *Mayhew, et al. v. KAS Direct, LLC and S.C. Johnson*, Case No. 7:16-cv-06981 (S.D.N.Y.). The *Mayhew* settlement, if approved, would give Plaintiffs and the Putative Babyganics Sunscreen Class a refund for their purchases of the Products.

This case should not proceed while the *Mayhew* settlement is pending. Because Plaintiffs would be part of the Babyganics Settlement Class unless they were to opt out—a fact Plaintiffs themselves seem to acknowledge in their own recent filings in *Mayhew*—Plaintiffs' ability to maintain this action depends on resolution of the *Mayhew* settlement. If the *Mayhew* settlement is approved, the Putative Babyganics Sunscreen Class will consist of a subset of those few Babyganics Settlement Class members who choose to opt out. The Court, Plaintiffs and Defendants need not waste resources litigating a broad class action that could be significantly narrowed, if not eliminated, by resolution of a related class action in the coming months.

## II.   **BACKGROUND**

### A.   *Mayhew v. KAS Direct, LLC and S.C. Johnson*

On September 7, 2016, the *Mayhew* plaintiffs filed class action complaint against KAS Direct, LLC ("KAS"), alleging that Babyganics products were falsely and deceptively advertised as "organic" or "mineral based." Case No. 7:16-cv-06981 (S.D.N.Y.), Dkt. 1 (Request for Judicial Notice ("RJN") Ex. A). On August 7, 2017, the *Mayhew* plaintiffs filed the operative first amended complaint, adding S.C. Johnson, which had acquired KAS, as a defendant. *Id.* Dkt. No. 45 ¶ 21 (RJN Ex. B). Included in the *Mayhew* plaintiffs' allegations are "Babyganics mineral-based sunscreen spray 50+ SPF," "Babyganics mineral-based sunscreen 50+ SPF," "Babyganics mineral-based sunscreen 50+ SPF single use tubes," and "Babyganics pure mineral sunscreen stick 50+ SPF," which the plaintiffs allege were not "mineral based" as advertised. *Id.* ¶¶ 1, 5, 36-47. The complaint asserts claims on behalf of a national class "defined as all

consumers who purchased the Products anywhere in the United States during the Class Period."
*Id.* ¶ 63.

On August 4, 2017, the *Mayhew* plaintiffs filed the currently pending motion for
preliminary approval of a class action settlement, which is unopposed by KAS and S.C. Johnson.
*Id.*, Dkt. No. 39 (RJN Ex. C). The proposed Babyganics Settlement Class "includes all persons
or entities in the United States who made retail purchases of Covered Products during the
Settlement Class Period." *Id.* at 4. The settlement agreement, in turn, defines the "Settlement
Class Period" as "the period beginning on (and including) September 7, 2010 and ending on (and
including) the date the Court enters the Preliminary Approval Order" and "Covered Product" as
"any Babyganics product, regardless of product line, scent, and/or unit size, marketed and sold
by Defendants in the United States." *Id.* Dkt. No. 40-1 at 7 (RJN Ex. D). The settlement
agreement provides that each Babyganics Settlement Class member "shall be entitled to a cash
refund in the amount of one hundred percent (100%) of any purchase of a Covered Product for
which a Proof of Purchase is provided," or if a proof of purchase is not provided, the class
member "is entitled to recover for up to eight (8) Covered Product purchases" in the following
amounts (subject to *pro rata* adjustments): (1) $5.00 per product that is valued between $1.99
and $9.99, (2) $10.00 per product that is valued between $10.00 and $19.99, (3) $15.00 per
product that is valued between $20.00 and $29.0, (4) $20.00 per product that is valued between
$30.00 and $39.99, and (5) $25.00 per that is valued over $40.00 *Id.* at 15-16. Babyganics
Settlement Class members who wish to be excluded from the settlement must opt out by the
"Opt-Out Date," which "shall be no later than 30 days before the date first set for the Final
Approval Hearing." *Id.* at 9, 26–27. Those class members who do not opt out by the opt out
date release all claims regarding the Covered Products "based on any assertion or contention that

3

the packaging of the Covered Products, including the labels, or Advertising based on the content of those labels were inaccurate, misleading, false, deceptive or fraudulent." *Id.* at 9-10, 28-29.

On August 25, 2017, Plaintiffs in this action filed a motion to intervene in *Mayhew* and an opposition to the motion for preliminary settlement. *Id.* Dkt. Nos. 56-57 (RJN Exs. E & F). Plaintiffs object to the settlement on the purported grounds that the class-wide release "goes well beyond the boundaries of the claims actually raised in the *Mayhew* Amended Complaint" and releases all claims "relating to the packaging and labeling of Defendants' babyganics sunscreen." *Id.* Dkt. No. 56 (RJN Ex. E) at 2. Plaintiffs acknowledge that the release in *Mayhew* "could be read to extinguish . . . claims such as those pleaded in the *Carroll* Action." *Id.*; *see also id.* Dkt. No. 57 (RJN Ex. F) at 5 ("The existing parties to the *Mayhew* Action would give away the *Carroll* claims . . ."). Plaintiffs request that the release language in the settlement agreement be altered to allow "the *Carroll* Plaintiffs to preserve their rights to litigate matters unrelated to the *Mayhew* Action." *Id.* Dkt. No. 56 (RJN Ex. E) at 7.

KAS, S.C. Johnson, and the Mayhew plaintiffs' deadline to oppose Plaintiffs' motion to intervene in *Mayhew* is October 16, 2017. *Id.* Dkt. No. 80, 82 (RJN Exs. G & H). The *Mayhew* court will set the hearing for preliminary approval of the class settlement after the motion to intervene—as well as motions to intervene filed by other plaintiffs are fully briefed. *Id.* Dkt. No. 60 (RJN Ex. I).

### B. Plaintiffs' Complaint

Plaintiffs' class action complaint seeks damages against S.C. Johnson arising from their alleged purchases of the same Babyganics "mineral-based sunscreen lotion SPF 50+" and Babyganics "mineral-based sunscreen spray SPF 50+" covered by the *Mayhew* settlement. *See* Compl. ¶ 5; RJN Ex. A at ¶ 5. Plaintiffs all allege to have purchased the Products sometime

between August 2, 2015, and March 15, 2017, thus falling into the *Mayhew* settlement class period. Compl. ¶¶ 16-19. Plaintiffs allege that they would not have purchased these sunscreens or would have not paid a "premium price" had they "known that the Products have less SPF protection than Defendants otherwise advertise." *Id.* ¶ 11. Like the *Mayhew* plaintiffs, Plaintiffs assert claims on behalf of a national class of "persons who purchased [the Products] in the United States." *Id.* ¶ 62.

## III.    A STAY IS WARRANTED PENDING APPROVAL OF THE *MAYHEW* SETTLEMENT

The Court has broad discretion to stay proceedings. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). "Courts in this district have recognized that when two related cases are pending in separate federal courts, either of those courts may exercise that inherent power to stay the proceedings before it in deference to the related action." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). Courts have found stays appropriate when settlements of related class actions are pending. *See, e.g.*, *Loor v. Tween Brands, Inc.*, 2015 WL 6704579 (M.D. Fla. Nov. 3, 2015); *Kallay v. Tween Brands, Inc.*, 2015 WL 13186225 (S.D. Ohio Oct. 29, 2015); *Pearson v. Wells Fargo, N.A.*, 2014 WL 2452802 (W.D. Wash. June 2, 2014)

To determine whether to grant a motion to stay, courts consider three factors: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay

will reduce the burden of litigation on the parties and the court." *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, 2016 WL 47916, at *2 (N.D. Ill. Jan. 5, 2016).

### A.    A Stay Will Not Unduly Prejudice or Tactically Disadvantage Plaintiffs.

Plaintiffs cannot claim harm by a stay.  Plaintiffs are currently members of the Babyganics Settlement Class, all having purchased the Products (which are *Mayhew* class products) between 2015 and 2017 (covered by the *Mayhew* class period).  If the *Mayhew* settlement is approved, and Plaintiffs choose not to opt out or fail to opt out by the opt-out date, Plaintiffs cannot proceed in this action at all.  They will have released their claims—a fact Plaintiffs themselves acknowledge.  RJN Ex. D at 9-10, 28-29; RJN Ex. F at 5 ("The existing parties to the *Mayhew* Action would give away the *Carroll* claims . . .").  Moreover, their claims will be mooted because they will have already received a generous recovery for the Products they purchased.  *See Murphy v. Smith*, 864 F.3d 583, 587 n.1 (7th Cir. 2017) (a "plaintiff may not win a double recovery for the same injury"); *Pearson*, 2014 WL 2452802, at *4 (no prejudice where "[t]he motion merely seeks to stay proceedings until the court can determine whether [plaintiff] and the Washington class have themselves chosen to be bound to the *Fladell* settlement by failing to opt out").  Regardless of whether Plaintiffs ultimately opt out of any approved settlement, they will be Babyganics Settlement Class members unless and until they choose to opt out and have no right to proceed with this case in the interim.  *See Ross v. Hardy*, 2014 WL 2135938, at *4 (N.D. Ill. May 22, 2014) (staying action where the plaintiff was a member of class in a similar class action because "he must first opt out of the class before this case can proceed").  Because Plaintiffs' rights to pursue their claims are contingent on *Mayhew*, they cannot claim prejudice by allowing the *Mayhew* settlement to resolve before proceeding further in this action.

Moreover, this case is in its infancy—the complaint was just filed, and no discovery has yet occurred. A stay is particularly appropriate where, as here, the case is in its early stages. *Woodman's Food Mkt., Inc. v. Clorox Co.*, 2015 WL 4858396, at *3 (W.D. Wis. Aug. 13, 2015) (issuing stay and noting that, "[a]lthough this lawsuit was filed over nine months ago, it still is in its early stages" because defendant only recently moved to dismiss); *Transocean Offshore Deepwater Drilling, Inc. v. Seadrill Ams., Inc.*, 2015 WL 6394436, at *5 (S.D. Tex. Oct. 22, 2015) (stay appropriate because the "case is still in its early stages [and] [t]he parties have not yet incurred the substantial burdens associated with extensive discovery").

Plaintiffs may contend that the prosecution of their claims will be delayed, but that is "an insufficient basis to deny a stay." *Gustavson v. Mars, Inc.*, 2014 WL 6986421, at *3 (N.D. Cal. Dec. 10, 2014). A delay of some months will not prejudice Plaintiffs' potential recovery in this action. *See, e.g.*, *Pearson*, 2014 WL 2452802, at *3 (no prejudice to the plaintiff from stay pending related class action settlement because it would "only delay the action for approximately four months" and not hinder her "ability to ultimately bring her suit"); *see also Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 2015 WL 4397175, at *4 (C.D. Cal. June 8, 2015) (issuing stay and noting "plaintiffs seeking damages awards are not substantially injured by some delay"). Moreover, a stay will actually benefit Plaintiffs. Plaintiffs will have a better understanding of the size of their potential class, the value of their claims, and, as they put it, their "rights to litigate matters unrelated to the *Mayhew* Action," only after *Mayhew* is resolved. RJN Ex. E at 7.

**B.     A Stay Would Help Narrow and Streamline this Case.**

If approved, the *Mayhew* settlement will likely lead to a quick disposition of this action. If Plaintiffs do not opt out of an approved *Mayhew* settlement, this action will be resolved because Plaintiffs can no longer proceed. *Pfizer*, 640 F. Supp. 2d at 1008 (stay appropriate

7

where resolution of related action could "eliminate entirely the need for any further proceedings"). Even if Plaintiffs do opt out, a *Mayhew* settlement would significantly impact, and may facilitate a speedy resolution of, this action, whether by voluntary dismissal, Court action or settlement. A *Mayhew* settlement would greatly reduce the size of Plaintiffs' proposed class and, correspondingly, any potential recovery. It would also make it difficult—if not impossible—for Plaintiffs to adequately represent a class. Just recently, the Seventh Circuit reaffirmed that where a related class settlement significantly shrinks a putative class suing over low-cost goods, it raises serious adequacy concerns. *See Conrad v. Boiron, Inc.*, 869 F.3d 536 (7th Cir. Aug. 24, 2017) (affirming denial of class certification motion). In *Conrad*, the Seventh Circuit affirmed denial of class certification because "[t]he combination of low-value claims and small class size is likely to make this another case in which 'high transaction costs (notice and attorneys' fees)' will leave class members with a negligible award." *Id.* at 540 (citing *In Aqua Dots Prod. Liab. Litig.*, 654 F.3d 749, 752 (7th Cir. 2011)).

### C. A Stay Would Reduce The Burden On The Court And the Parties.

Absent a stay, the Court would need to expend substantial resources presiding over broad class claims and extensive discovery. Likewise, Defendants would incur substantial litigation expenses drafting dispositive motions, conducting discovery, briefing class certification issues, and possibly preparing for trial. These expenses and resources could be minimized, or even avoided altogether, by resolution of *Mayhew*. *See Pfizer*, 640 F. Supp. 2d at 1008 (stay necessary to avoid expending "a considerable amount of the Court's time and the parties' money"); *Kallay*, 2015 WL 13186225, at *2 ("If the *Rougvie* settlement is approved, this case will have fewer class members, fewer claims, and fewer issues for the Court to resolve, all of which would conserve judicial resources."); *Pearson*, 2014 WL 2452802, at *4 ("If the court

allows the present suit to continue without first determining the status of the *Fladell* settlement class, the uncertainty as to the ability of both Ms. Pearson and the putative class to participate in the litigation could cause considerable hardship to Defendants, complicate the litigation, and waste judicial resources. If the court grants the stay, however, the *Fladell* settlement could simplify matters for this court by determining the landscape of plaintiffs who are permitted to bring or participate in suits against Wells Fargo.").

## IV.    **CONCLUSION**

For all of the foregoing reasons, S.C. Johnson respectfully requests that the Court stay this action pending final resolution of the *Mayhew* settlement.

Dated:   October 2, 2017                         Respectfully Submitted,

By: */s/ Amy J. Laurendeau*
　　　　　Amy J. Laurendeau

Amy J. Laurendeau
  alaurendeau@omm.com
Matthew J. Smock
  msmock@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, Suite 1700
Newport Beach, CA 92660
Telephone:    (949) 823-6900
Facsimile:    (949) 823-6994

Brook R. Long
  blong@winston.com
**Winston & Strawn LLP**
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:    (312) 558-5994
Facsimile:    (312) 558-5700

*Attorneys for Defendant S.C. Johnson & Son, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2017, I caused the foregoing document to be electronically filed with the clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.

Executed on October 2, 2017, in Newport Beach, California.

*/s/ Amy J. Laurendeau*
Amy J. Laurendeau